UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EVANGELICAL LUTHERAN CHURCH
IN AMERICA,

Case No.

    a duly organized non-profit
    religious organization,
    8765 West Higgins Road
    Chicago, Illinois 60631-4177

and

SUHAIL S. QUMRI,
    7930 N. Oketo Avenue
    Niles, Illinois 60714

PLAINTIFFS,

vs.

IMMIGRATION AND NATURALIZATION SERVICE
OF THE UNITED STATES OF AMERICA,
    c/o James Ziglar, Commissioner
    425  I ("Eye") Street, NW
    Room 7100
    Washington, D.C. 20536
 and
THE DEPARTMENT OF JUSTICE OF THE UNITED
STATES OF AMERICA,
    c/o John Ashcroft, Attorney General
    1100 L Street, NW,
    Room 8035
    Washington, D.C. 20530

DEFENDANTS.

_____/

## **COMPLAINT**

This is a Complaint for Declaratory and Injunctive Relief, pursuant to 28 U.S.C.

1331, 28 U.S.C. 2201, 5 U.S.C. 551 et. seq.,  5 U.S.C. 701 et seq., for a Writ of

Mandamus, pursuant to 28 U.S.C. 1361, and for Declaratory and Injunctive Relief for violations of the Administrative Procedures Act (hereinafter "APA"), 5 U.S.C. 701 et seq. & 501, et seq., the Freedom of Information Act, (hereinafter "FOIA"), 5 U.S.C. 552, and the Due Process Clause of the Fifth Amendment to the United States Constitution (hereinafter "Due Process Clause").

1.      Plaintiffs, EVANGELICAL LUTHERAN CHURCH IN AMERICA (hereinafter "ELCA") and SUHAIL S. QUMRI (hereinafter "QUMRI"), allege by this action that Defendants, Immigration and Naturalization Service (hereinafter "INS" or "Service") and the Department of Justice of the United States of America (hereinafter "DOJ") violated a mandatory regulation promulgated by Defendants which provides that "[a] beneficiary [of an H-1B petition] shall be admitted to the United States for the validity period of the petition, plus a period of up to 10 days before the validity period ends."  8 C.F.R. 214.2(h)(13)(i)(A). As a result of Defendants' violation of 8 C.F.R. 214(h)(13)(i)(A), Plaintiffs have suffered and will continue to suffer damage and irreparable injury, for which they seek declaratory and injunctive relief, and/or a writ of mandamus.

2.      Plaintiffs further allege that Defendants' interpretation of 8 C.F.R. 214.1(c)(4), an INS regulation authorizing the Service to excuse the late filing of a request to extend an alien's stay in the United States if certain criteria are met, adds two impossible-to-satisfy eligibility requirements that are not set forth in the regulation.  Defendants' de facto revocation of 8 C.F.R. 214.1(c)(4), without any prior notice or opportunity for public comment, constitutes a violation of the APA, the FOIA and the Due Process Clause.  As a result of Defendants' unlawful interpretation of 8 C.F.R. 214.1(c)(4), Plaintiffs have suffered and will continue to suffer damage and irreparable injury, for which they seek declaratory

and injunctive relief, and/or a writ of mandamus.

## JURISDICTION AND VENUE

3.     The subject matter jurisdiction for this Court is invoked under 28 U.S.C. 1331, 1361, 1367(a) and 2201, 5 U.S.C. 701 et seq., and 5 U.S.C. 501 et seq.

4.     Venue is proper in this district pursuant to 28 U.S.C. 1391(e)(1) and 1391(e)(2), as Defendants are agencies of the federal government and located in the District of Columbia.

## PARTIES

5.     Plaintiff ELCA is a duly organized non-profit religious organization, organized pursuant to the laws of the State of Minnesota, having its principal place of business in Chicago, Illinois.  ELCA has more than 5.2 million members belonging to over 11,000 congregations, making ELCA the fifth largest Christian church body in the United States.

6.     Plaintiff QUMRI is a citizen of Israel who has been a full-time employee of ELCA since June 15, 1998.  QUMRI resides in Chicago, Illinois with his wife and is employed by ELCA in the position of Senior Financial Systems Analyst.

7.     Defendant INS is an agency of the federal government within the Department of Justice.  The INS is the federal agency charged with implementing the Immigration and Nationality Act (hereinafter "INA"), 8 U.S.C. 1101, et seq.  Pursuant to this authority, the INS adjudicates petitions for immigrant and nonimmigrant status and applications for other

protections and benefits provided under the INA, including petitions for professional workers in the H-1B nonimmigrant "Specialty Occupation Workers" classification, and the admission of such aliens to the U.S.

8.      Defendant DOJ, through the Attorney General, is charged with the responsibility for the administration and enforcement of the INA, pursuant to 8 U.S.C. 1103(a), including timely rulemaking and the interpretation, application and enforcement of the INA.  Pursuant to 8 U.S.C. 1184(a)(1), "the admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe."  Thus, the admission of H-1B aliens to the U.S. is governed by regulations promulgated by the Attorney General.

9.      An actual controversy has arisen and now exists between the parties relating to their rights and duties.  Plaintiffs have exhausted their administrative remedies and no further administrative remedy exists to cure the unlawful conduct of the Defendants as alleged herein.

## FACTUAL ALLEGATIONS

10.      In May 1998, QUMRI earned a Bachelor of Science degree in Accounting from North Park University, in Chicago, Illinois.  He became a full-time of employee of ELCA on June 15, 1998.  At that time, he was in F-1 (student visa) status with optional practical training work authorization valid from May 26, 1998 through May 25, 1999.

11.      On December 9, 1998, ELCA submitted an H-1B petition on QUMRI's behalf for the position of Financial Systems Analyst, along with a request for a three-year extension of QUMRI's stay in the United States and a change of his status to H-1B for a

period of three years.  The Defendants normally grant H-1B status, and a corresponding extension of stay, for a period of three years.  However, due to Defendants' delay in processing ELCA's petition, Defendants did not approve the petition until April 6, 1999, and the Approval Notice granted ELCA an H-1B validity period of less than three years, from April 2, 1999 through November 1, 2001, and granted QUMRI an extension of stay until November 1, 2001.

12.     In April 1999, QUMRI departed the United States and applied for an H-1B visa in Israel.  Based on the H-1B petition Approval Notice issued by Defendants, the U.S. Consulate in Jerusalem issued QUMRI an H-1B visa valid from April 29, 1999 through April 28, 2000, which it immediately cancelled without prejudice because it set forth an incorrect passport number.  Shortly thereafter, the Consulate issued QUMRI an H-1B visa valid from May 3, 1999 through May 2, 2000.  The visa erroneously states the H-1B petition expiration date (PED) as January 11, 2001.  Apparently, the Consulate transposed the numbers "1" and "11".  The actual PED was November 1, 2001.

13.     When QUMRI entered the United States in Chicago on May 4, 1999, he showed the H-1B petition approval, as well as his passport with the H-1B visa stamps, to the INS inspector.  Pursuant to INS regulations, the Inspector, upon finding QUMRI admissible, was required by regulation to endorse QUMRI's I-94 Arrival and Departure Record (hereinafter "I-94 card") with an expiration date of November 11, 2001, corresponding to the expiration date of the H-1B petition approval, plus ten days. However, the Inspector erroneously entered on the I-94 card an expiration date of April 27, 2000.

14.     The Defendants have established a policy known as the "last action taken" rule.  According to this established policy, QUMRI's authorized stay in the United States

was determined by the endorsement on his I-94 card authorizing his stay until April 27, 2000, rather than the earlier I-94 issued on the bottom of the H-1B Approval Notice, authorizing his stay until November 1, 2001.

15.     When ELCA filed the H-1B petition on behalf of QUMRI in December 1998, it did not select its own outside immigration counsel, but relied on an attorney selected by QUMRI.  ELCA was not advised by that attorney of any due date for filing a petition for extension on behalf of QUMRI.  ELCA employs at least 472 full-time employees and 39 part-time employees.  However, it only employs two H-1B employees, including QUMRI. Due to the Church's inexperience with H-1Bs, it did not have in place a calendaring system and, until recently, did not employ its own outside counsel, to monitor compliance with H-1B filing dates for extensions.

16.     QUMRI was confused concerning the expiration of his H-1B status.  Due to an INS processing delay, the initial H-1B petition was approved for only a two-and-a-half year period, from April 2, 1999 through November 1, 2001, although the H-1B petition had asked for a three-year approval period and extension of stay.  QUMRI's practical training was valid through May 1999.  He assumed his H-1B status, and his stay in the United States, was valid and authorized for three years, from April 1999 through April 2002.  The various immigration documents issued to QUMRI did not provide him with clear guidance regarding his immigration status.  There were no less than seven different expiration dates set forth in QUMRI's various immigration documents, namely his visas, I-94s, INS Approval Notice, Labor Condition Application (hereinafter "LCA") and work authorization.

17.     In addition to being confused about the expiration of his H-1B status, QUMRI, a Palestinian Christian, experienced fear and anxiety following the tragic events of

September 11, 2001.  QUMRI was also fearful and anxious for his family in Israel in view of
the violent events that were taking place there.  These distractions contributed to QUMRI's
failure to discover the expiration of his H-1B status.

18.     ELCA and QUMRI learned of the expiration of QUMRI's petition approval on
or about December 3, 2001.  Within a few days, ELCA hired its own outside immigration
counsel on the QUMRI matter and worked diligently with its counsel to complete a petition
to extend QUMRI's H-1B status and his stay in the United States.  The petition was filed
with the INS on January 4, 2002.

19.     As part of the process of petitioning for an H-1B petition extension, ELCA
submitted an LCA to the U.S. Department of Labor (hereinafter "DOL").  The DOL is the
government agency responsible for approving LCA's.  Approved LCA's are required to be
submitted to the INS when petitioning the INS for the H-1B "Specialty Occupation Worker"
nonimmigrant visa classification, and when petitioning the INS for an extension of H-1B
status.  Shortly after learning of the need to extend QUMRI's H-1B status, ELCA submitted
an LCA to the DOL for QUMRI's position of Senior Financial Systems Analyst.  The DOL
approved the LCA on December 21, 2001, valid through October 31, 2004.

20.     ELCA submitted the approved LCA to the INS together with its petition to
extend QUMRI's H-1B status.  ELCA's petition asked the INS to correct its error and to rule
that QUMRI's initial H-1B status was valid at least until November 1, 2001, rather than April
27, 2000, as erroneously endorsed by the INS Inspector at the port of entry.

21.     ELCA's petition also asked the INS to excuse the two-month delay in filing
the petition based on excusable neglect, as authorized by INS regulations.  See 8 C.F.R.
214.1(c)(4).  ELCA's letter in support of the request for an extension of QUMRI's stay

explained the circumstances surrounding the late filing of the petition, including the Church's failure to calendar the H-1B expiration and the delay necessitated by having newly retained counsel research the factual and legal issues presented by the case. ELCA's letter in support of the extension of stay also explained QUMRI's confusion concerning the expiration of his H-1B status.

22.     In addition, ELCA's letter identified the clear and prejudicial Service error that occurred when the INS Inspector endorsed QUMRI's I-94 card with an expiration date of April 27, 2000, although the underlying H-1B petition was valid through November 1, 2001.  The I-94 expiration date governs an alien's lawful, and unlawful, presence in the United States.  Therefore, as a result of the INS's error, QUMRI, through no fault of his own, had accumulated unlawful presence since April 28, 2000.  The letter pointed out that if the Service failed to rectify its error, QUMRI would be subject to a statutory provision barring him from re-entering the United States for a period of ten years.  See 8 U.S.C. 1182(a)(9)(B).  Under the statute, an alien who was unlawfully present in the United States for more than 180 days, but less than one year, is barred from re-entering the United States for a period of three years, and an alien with a year or more of unlawful presence is subject to a ten-year re-entry bar.

23.     Because of the complexity of the issues surrounding the petition, and intervening national holidays, ELCA filed its petition for an H-1B extension and an extension of QUMRI's stay on January 4, 2002, as reflected on the premium processing receipt notice generated by Defendants.

24.     On January 7, 2002, the INS' Nebraska Service Center (hereinafter "NSC") granted the H-1B petition extension through October 31, 2004.  However, it denied the request for an extension of stay.  The "Notice of Action" issued by the NCS stated that

QUMRI was ineligible for an extension of his stay in the United States, and therefore he would need to return to Israel to apply for an H-1B visa.  Of course, the INS was well aware that if QUMRI left the United States he would be subject to a ten-year reentry bar.

25.     In a letter that accompanied the "Notice of Action," the NSC explained the purported reasons for its denial of the request to extend QUMRI's stay.  The letter was silent regarding the issues of excusable neglect, the circumstances surrounding the late filing of the request to extend QUMRI's stay, and the Service error that resulted in QUMRI accumulating unlawful presence since April 28, 2000.  Instead, the letter set forth two reasons for the denial.  First, the NSC stated that QUMRI had allowed his H-1B status to lapse on November 1, 2001, and therefore he was ineligible for an extension of stay.  Secondly, the NSC stated that it was unable to approve the requested extension of stay retroactive to November 1, 2001 because the LCA was not approved by the DOL until December 21, 2001.

26.     ELCA timely filed a Motion to Reconsider or Reopen the NSC's decision on February 7, 2002.  The Motion to Reconsider asked the NSC to reconsider its legally incorrect decision and to address the issues and circumstances which it had failed to address in its denial letter.  In addition, the Motion asked the NSC to determine that QUMRI's stay in the United States was lawful since April 28, 2000.  The motion also asked the NSC to determine that QUMRI would not accrue unlawful presence during the time he and ELCA sought to correct the Service's error, i.e., from January 4, 2002 until Plaintiffs exhausted their administrative and judicial remedies.

27.     ELCA's Motion to Reopen was based on new evidence set forth in QUMRI's affidavit, which was attached to the Motion.  This new evidence, concerning the devastating

effect the events of September 11, 2001 had on QUMRI, established an additional basis for a finding of excusable neglect.

28.     On March 6, 2002, the NSC issued a decision denying the relief ECLA sought in its Motion to Reconsider or Reopen.  The written decision once again failed to address the issues raised by ELCA.  Instead, the NSC merely reiterated its position that QUMRI's stay could not be extended because he had allowed his status to expire on November 1, 2001.  Both the denial of January 7, 2002 and the March 6, 2002 denial of ELCA's Motion to Reconsider or Reopen completely failed to address the issue of ELCA's excusable neglect.

29.     On April 5, 2002, ELCA and QUMRI filed a Notice of Appeal to the INS Administrative Appeals Office (hereinafter "AAO").  The NSC accepted the Notice and generated a receipt notice dated April 5, 2002.  However, on May 16, 2002 the NSC issued a letter stating that a denial of an extension of nonimmigrant stay is not administratively appealable and therefore the appeal was being treated as a Motion to Reopen.  The NSC did not avail itself of the opportunity to certify its decision to the AAO, pursuant to 8 C.F.R. 103.4(a).  The NSC's letter stated that the Motion to Reopen was denied on the grounds, once again, that QUMRI had allowed his H-1B status to expire on November 1, 2001.  The NSC also issued a "Notice of Action" dated May 16, 2002 approving ELCA's petition for an H-1B extension through October 31, 2004, but denying the request to extend QUMRI's stay on the grounds of ineligibility.  With the exception of the date of the Notice of Action, it was identical to the one issued by the NSC dated January 7, 2002.

30.     8 C.F.R. 214.2(h)(13)(i)(A), referring to the admission of aliens to the United States in the H-1B visa classification, provides:

A beneficiary shall be admitted to the United States for the validity period of the petition, plus a period of 10 days before the validity period begins and 10 days after the validity period ends.

31.     The Defendants are familiar with the federal laws governing the INS and their own regulations, and they are bound to follow those laws and regulations when discharging their responsibilities regarding the admission of H-1B aliens to the United States. Pursuant to 8 U.S.C. 1184(a)(1), "the admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe."  The Defendants' failure to correct the erroneous endorsement on QUMRI's I-94 card, when requested to do so by Plaintiffs, constitutes a violation of 8 C.F.R. 214.2(h)(13)(i)(A) and 8 U.S.C. 1184(a)(1).

32.     8 C.F.R. 214.1(c)(4) provides:

Timely filing and maintenance of status.  An extension of stay may not be approved for an applicant who failed to maintain the previously accorded status or where such status expired before the application or petition was filed, except that failure to file before the period of previously authorized status expired may be excused in the discretion of the Service and without separate application, with any extension granted from the date the previously authorized stay expired, where it is demonstrated at the time of filing that:

(i) The delay was due to extraordinary circumstances beyond the control of the applicant or petitioner, and the Service finds the delay commensurate with the circumstances;

(ii) The alien has not otherwise violated his or her nonimmigrant status;

(iii) The alien remains a bona fide nonimmigrant;

and

> (iv) The alien is not the subject of deportation proceedings under section 242 of the Act (prior to April 1, 1997), or removal proceedings under section 240 of the Act.

33.     The NSC's decision stated that Plaintiffs were not eligible for excusable neglect relief from the untimely filed request to extend QUMRI's stay, under 8 C.F.R. 214.1(c)(4), because QUMRI had allowed his status to expire on November 1, 2001 and because the LCA was approved by the DOL for a period beginning on December 12, 2001.  Thus, Defendants' interpretation of 8 C.F.R. 214.1(c)(4) added two additional eligibility criteria not set forth in the regulation, to wit:

a.      The alien on whose behalf an extension is being sought must be in valid status when the request for excusable neglect relief is filed; and

b.      A DOL-approved LCA must be valid retroactively to the date the alien's previous status expired.

34.     The first additional eligibility criteria imposed by Defendants is on its face impossible for an alien to satisfy when invoking 8 C.F.R. 214.1(c)(4).  By its very nature, excusable neglect relief is sought in connection with an <u>untimely</u> request to extend an alien's status.  Thus, under Defendants' interpretation of 8 C.F.R. 214.1(c)(4), every alien for whom excusable neglect relief is sought will be ineligible for the relief authorized by the regulation.

35.     The second additional eligibility criteria imposed by Defendants is also impossible to satisfy.  The DOL is not authorized to approve an LCA retroactively to a prior date.  20 C.F.R. 655.750(a) ("[I]n no event shall the validity period of a labor condition application begin before the application is certified…").  Therefore, under Defendants' interpretation of 8 C.F.R. 214.1(c)(4), every alien for whom excusable neglect relief is

sought will have an LCA approval dated after his or her previous status expired and therefore will be ineligible for the relief authorized by the regulation.

36.     Having promulgated a regulation authorizing a late filed request for an extension of stay to be approved retroactively to the date the alien's previous status expired, the Defendants are bound to apply the eligibility criteria set forth in the regulation and only those criteria.  See 8 U.S.C. 1184(a)(1).  The Defendants' interpretation of 8 C.F.R. 214.1(c)(4), which adds two additional and impossible-to-satisfy eligibility criteria not set forth in the regulation, renders the regulation inoperable and therefore constitutes a de facto revocation of the regulation.  This de facto revocation of 8 C.F.R. was accomplished by the Defendants without any prior notice or opportunity for public comment.

37.     As a result of the Defendants' unlawful actions, ELCA and QUMRI have been extremely prejudiced and are suffering irreparable injury in that:

a.     ELCA can no longer lawfully employ QUMRI, and therefore will be unable to benefit from his professional services as a Senior Financial Systems Analyst, and faces imminent employer sanctions by the Defendants;

b.     QUMRI can no longer be lawfully employed by ELCA or any other employer in the United States, and therefore is deprived of the ability to earn a livelihood in the United States, where he has been educated and trained for his profession as a Senior Financial Systems Analyst;

c.     QUMRI is subject to being detained and removed from the United States;

d.     QUMRI must leave the United States, where he now resides with his wife and has substantial ties to the community.  He will be unable to return for a period

of ten years, since he has accrued over two years of unlawful presence in the United States and therefore is subject to a ten-year re-entry bar pursuant to 8 U.S.C. 1182(a)(9)(B).

38.     Plaintiffs seek a declaration that the Defendants' unlawful and prejudicial actions constitute a violation of the following authorities:

a.     8 C.F.R. 214.2(h)(13)(i)(A);

b.     8 C.F.R. 214.1(c)(4);

c.     8 U.S.C. 1184(a)(1);

d.     The Due Process Clause of the Fifth Amendment to the U.S. Constitution;

e.     The APA, 5 U.S.C. 706(2)(A), in that it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law";

f.     The APA, 5 U.S.C. 706(2)(B), in that it is "contrary to a constitutional right, power, privilege, or immunity", namely, the Due Process Clause;

g.     The APA, 5 U.S.C. 706(2)(C), in that it is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right";

h.     The APA, 5 U.S.C. 706(2)(D), in that it is "without observance of procedure required by law";

i.     The FOIA, 5 U.S.C. 552(a)(1)(E), in that the Defendants have by their interpretation effectively amended or repealed a published regulation without providing prior notice or opportunity for public comment;

j.      The FOIA, 5 U.S.C. 552(a)(2), in that Defendants have utilized rules or policies not published or otherwise made available to the public;

k.      The APA, 5 U.S.C. 553, in that the Defendants have engaged in rulemaking, by adopting additional eligibility criteria to 8 C.F.R. 214.1(c)(4) that are not set forth in the published regulation, without complying with the notice and comment provisions of the APA;

l.      The APA, 5 U.S.C. 555(e), in that the Defendants have denied relief sought by Plaintiffs without providing a meaningful explanation of the grounds for the denial.

39.      Plaintiffs seek preliminary and permanent injunctive relief, and/or a writ of mandamus.  Plaintiffs seek a permanent injunction, and/or a writ of mandamus requiring Defendants:

a.      to issue a determination that QUMRI was in lawful status, and lawfully employed by ELCA, from April 28, 2000 until November 11, 2001, pursuant to 8 C.F.R. 214.2(h)(13)(i)(A);

b.      to issue a determination that QUMRI's stay in the United States, and his employment by ELCA, was lawful during all periods of time during which he sought to compel the Defendants to correct their violation of 8 C.F.R. 214.2(h)(13)(i)(A), i.e., from January 4, 2002 until this action becomes final;

c.      to reconsider ELCA's excusable neglect request for a retroactive extension of stay, upon remand, by applying the criteria set forth in 8 C.F.R. 214.1(c)(4), and only those criteria.

40.     In order to maintain the status quo pending the permanent relief sought herein, the Plaintiffs seek a preliminary injunction, pursuant to Rule 56 of the Federal Rules of Civil Procedure, to enjoin the Defendants and their agents, servants and employees from taking any adverse actions against ELCA and QUMRI as a result of alleged unlawful employment and/or presence, including any of the following possible adverse actions:

a.      employer sanctions against ELCA;

b.      detention of QUMRI;

c.      removal of QUMRI from the United States.

Further, Plaintiffs seek a preliminary injunction allowing QUMRI to remain in the United States and continue his employment by ELCA without any adverse actions or interference by the Defendants, their agents, servants or employees, against ELCA or QUMRI, pending the final outcome of this lawsuit.


## COUNT I – DEFENDANTS' FAILURE TO ADMIT QUMRI UNTIL 11/11/01

41.     Plaintiffs re-aver and re-allege each and every allegation set forth in paragraphs 1 through 40 above as if the same were set forth in full herein.

42.     This is an action for declaratory relief pursuant to 28 U.S.C. 2201(a) and 2202, for injunctive relief pursuant to this Court's equitable powers and the APA, and/or for a writ of mandamus pursuant to 28 U.S.C. 1361.

43.     Defendants failed to admit QUMRI until November 11, 2001, in plain violation of 8 C.F.R. 214.2(h)(13)(i)(A) and 8 U.S.C. 1184(a)(1).  Taken together, these statutory and regulatory provisions require the Defendants to admit an H-1B alien for the validity

period of the H-1B petition, plus ten days.  When QUMRI re-entered the United States on

May 4, 1999 after a brief trip to Israel, the INS Inspector at the port of entry erroneously

endorsed his I-94 card with an expiration date of his authorized stay of April 27, 2000.

Plaintiffs brought this error to the Defendants' attention and requested a determination that

his stay in the United States was lawful until November 2001, when his H-1B petition

approval expired.  However, the Defendants ignored the Plaintiffs' request and denied the

relief sought without explanation, notwithstanding Plaintiffs' clear legal right to the relief they

sought and the extremely harsh consequences Plaintiffs would suffer in the absence of the

requested relief.

44.     Defendants failed to follow their own regulation, 8 C.F.R. 214.2(h)(13)(i)(A),

which mandates that an alien be admitted for the full validity period of the H-1B petition,

plus ten days.  This failure to follow a mandatory regulation constitutes a violation of several

provisions of the APA, the FOIA and the Due Process Clause.  Defendants' decision to

deny relief to which Plaintiffs were clearly entitled was unlawful, arbitrary, capricious, an

abuse of discretion, not in accordance with law and unconstitutional.

45.     As a result of the Defendants' deliberate disregard of their duties under the

INA and their own regulations, Plaintiffs have been severely prejudiced and will continue to

suffer irreparable harm in the future.  Thus, an actual controversy has arisen and now exists

between the parties relating to their respective rights and duties.

46.     There is a bona fide, actual, present, adverse controversy and Plaintiffs are

without an adequate remedy at law.  Plaintiffs request this Court to declare their rights

under the INA and the regulations promulgated by the Defendants, and to grant injunctive

relief and/or a writ of mandamus commanding the Defendants to determine that QUMRI's

stay in the United States, and his employment by ELCA, was lawful from April 28, 2000 until November 11, 2001.

47.     In addition, fairness and equity dictate that Defendants be commanded to determine that QUMRI's stay in the United States, and his employment by ELCA, was lawful, during the period of time he has sought to compel Defendants to perform a duty required by law, i.e., from January 4, 2001 until this action becomes final.  Plaintiffs should not suffer any prejudice as a result of Defendants' unlawful resistance of the performance of their mandatory duties under applicable statutes and regulations.  It is within the Court's equitable powers to grant relief from such unfair prejudice.

WHEREFORE, Plaintiffs respectfully request the Court to grant the following relief:

A.     Declare that Defendants' refusal to admit QUMRI until November 11, 2001, notwithstanding a mandatory regulation requiring that they do so, was unlawful, arbitrary, capricious, an abuse of discretion, not in accordance with law, and unconstitutional, in violation of the APA, the FOIA and the Due Process Clause;

B.     Issue a preliminary injunction allowing QUMRI to remain in the United States and continue his employment by ELCA without any adverse actions or interference by the Defendants, their agents, servants or employees, against ELCA or QUMRI, pending the final outcome of this lawsuit;

C.     Issue a permanent injunction, and/or a writ of mandamus, commanding Defendants to issue a written determination that QUMRI's stay in the United States, and his employment by ELCA, was lawful from April 28, 2000 until November 11, 2001;

D.      Issue a permanent injunction commanding Defendants to issue a written determination that QUMRI's stay in the United States, and his employment by ELCA, was lawful from January 4, 2002 until the final disposition of this lawsuit;

E.      Schedule a hearing within twenty (20) days on a preliminary injunction;

F.      Award reasonable attorney's fees and costs;

G.      Grant such further relief as this Court deems just and proper.

## COUNT II – DEFENDANTS' DE FACTO REVOCATION OF THE EXCUSABLE NEGLECT REGULATION,  8 C.F.R. 214.1(c)(4)

48.     Plaintiffs re-aver and re-allege each and every allegation set forth in paragraphs 1 through 47 above as if the same were set forth in full herein.

49.     This is an action for declaratory relief pursuant to 28 U.S.C. 2201(a) and 2202, for injunctive relief pursuant to this Court's equitable powers and the APA, and/or for a writ of mandamus pursuant to 28 U.S.C. 1361.

50.     In their written decisions denying ELCA's request to extend QUMRI's stay, pursuant to the excusable neglect regulation, 8 C.F.R. 214.1(c)(4), Defendants stated that QUMRI was ineligible for the relief sought because he failed to maintain lawful status prior to the filing of the request and because the LCA submitted by ELCA was not approved retroactively to the expiration of QUMRI's previous status.  In so ruling, Defendants imposed two additional eligibility criteria not set forth in the governing regulation.  These additional eligibility criteria are impossible for QUMRI and ELCA, or any other alien and his or her employer seeking excusable neglect relief, to satisfy.  Therefore, by rendering 8

C.F.R. 214.1(c)(4) inoperable, Defendants have effectively amended or revoked the regulation, without affording any prior notice or opportunity for public comment.

51.     Defendants' actions constitute a violation of several provisions of the APA, the FOIA and the Due Process Clause.  Defendants' actions were unlawful, arbitrary, capricious, an abuse of discretion, not in accordance with law, and unconstitutional.

52.     As a result of Defendants' deliberate disregard of their duties under the INA and their own regulations, the Plaintiffs have been severely prejudiced and are suffering and will continue to suffer irreparable harm in the future.  Thus, an actual controversy has arisen and now exists between the parties relating to their respective rights and duties.

53.     There is a bona fide, actual, present, adverse controversy and Plaintiffs are without an adequate remedy at law.  Plaintiffs request this Court to declare their rights under the INA and the regulations promulgated by the Defendants, and to grant injunctive relief and/or a writ of mandamus commanding the Defendants to reconsider ELCA's request for excusable neglect relief by applying the eligibility criteria set forth in 8 C.F.R. 214.1(c)(4), and only those criteria.

WHEREFORE, Plaintiffs respectfully request the Court to grant the following relief:

A.     Declare that Defendants' interpretation of 8 C.F.R. 214.1(c)(4) added two impossible-to-satisfy eligibility criteria, without affording the required notice and opportunity for public comment, that this interpretation of the regulation was unlawful, arbitrary, capricious, an abuse of discretion, not in accordance with law, and unconstitutional, and violated the APA, the FOIA and the Due Process Clause;

B.     Issue a preliminary injunction allowing QUMRI to remain in the United States and continue his employment by ELCA without any adverse actions or interference by the

Defendants, their agents, servants or employees, against ELCA or QUMRI, pending the final outcome of this lawsuit;

C.      Issue a permanent injunction, and/or a writ of mandamus, commanding Defendants to reconsider ELCA's request for excusable neglect relief by applying the eligibility criteria set forth in 8 C.F.R. 214.1(c)(4), <u>and only those criteria</u>;

D.      Schedule a hearing within twenty (20) days on a preliminary injunction;

E.      Award reasonable attorney's fees and costs;

F.      Grant such further relief as this Court deems just and proper.

Dated: June   , 2002.

Respectfully submitted,

LATAIF & ASSOCIATES, P.A.
Attorneys for Plaintiffs
5100 N. Federal Highway
Suite 202
Fort Lauderdale, FL  33308
Telephone:  (954) 776-5777
Facsimile:   (954) 776-2050
E-mail: lataif@aol.com

BY:_____
        LAWRENCE P. LATAIF, ESQ.
        D.C. Bar No.  60814

By: _____
        DAVID B. PAKULA, ESQ.

Florida Bar No. 712851
(D.C. Bar <u>pro</u> <u>hac</u> <u>vice</u> admission pending)